UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMNON ALEXANDER SHOMLO,

    Plaintiff,

v.                                                  CASE NO. 3:17-cv-1016-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income ("SSI"). Following an administrative hearing held on August 8, 2016, the assigned Administrative Law Judge ("ALJ") issued a decision on November 1, 2016, finding Plaintiff not disabled since November 18, 2013, the date the application was filed.[2] (Tr. 11-59.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

[2] Since Plaintiff amended his alleged disability onset date to November 18, 2013 (*see* Tr. 40-41), he was not entitled to a period of disability and disability insurance benefits ("DIB"), because he did not have a disability insured status on the onset date. (Tr. 14.) Therefore, the ALJ dismissed Plaintiff's request for a hearing to the extent it pertained to the claim for a period of disability and DIB. (*Id.*)

### I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

### II. Discussion

Plaintiff raises two issues on appeal. First, he argues that the ALJ erred by failing to analyze the impact of his knee impairment on his ability to perform medium work and by failing to analyze Exhibit 25F, which contained the

orthopedic records from Shands and the left knee MRI showing multiple tears and degeneration.[3]  Second, Plaintiff argues that the Appeals Council improperly denied review in light of Plaintiff's submission of new and material evidence, consisting of two years of primary care treatment notes, which created a reasonable probability of a different outcome.  The Court finds that a remand is required as to the first issue and, therefore, does not address the second issue.

At step two of the five-step sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, anxiety disorder, and affective disorder.  (Tr. 16.)  The ALJ also found that Plaintiff had the following non-severe impairments: fibromyalgia, chronic cardiovascular and pulmonary insufficiency, exercise-induced asthma, peripheral neuropathy, irritable bowel syndrome, carpal tunnel syndrome, and hypothyroidism.  (Tr. 17.)  The ALJ did not mention Plaintiff's knee impairment at step two.

Then, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work,[4] except he was unable to crawl or climb

---

[3] Plaintiff submitted these medical records after the hearing, but prior to the ALJ's decision.

[4] By definition, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c); *see also* SSR 83-10 ("The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. . . . Flexibility of the knees as well as the torso is important for this activity.").

ladders, ropes, or scaffolds, he was unable to work around unprotected heights, he could occasionally crouch, and he was limited to simple, unskilled, and repetitive work. (Tr. 19.) At that time, the ALJ mentioned Plaintiff's knee pain by stating: "In a letter dated January 6, 2015, Dr. Talmor wrote he was treating the claimant for difficulty of breathing, weakness, and pain in the knees." (Tr. 24.)

There is no other reference to Plaintiff's knee impairment or any of the diagnostic tests pertaining to his knees in the ALJ's decision, even though they were mentioned during the August 8, 2016 hearing. (*See* Tr. 38 ("I know he had some X-rays earlier this year of his knees."), 50 ("I had some flare in my knees, also, pain in the knees."), 50-51 ("You talked about your knees. Tell me a little bit about -- what kind of pain are you having in your knees? [Answer:] Well, it [sic] was diagnosed with (inaudible) and inflammation, and it seems like the bone now is exposed, also. . . . About a year ago, I started having pain. I couldn't walk on it. . . . [T]he acute pain . . . passed away after about a month. Been using a walker on and off . . . when it seems that it's coming back and I need to get the weight off . . . the knee."), 53 (stating that "since the knee problems," Plaintiff could stand "maybe 15 minutes, 30 minutes at most"), 54 (stating that if Plaintiff was carrying two gallons of water, he would "be putting a lot of pressure on . . . the knees and [his] body").)

After the hearing, but before the ALJ's November 1, 2016 decision, Plaintiff's representative sent a letter to the ALJ, dated October 4, 2016,

4

enclosing additional medical records from Shands Jacksonville, Department of Orthopedics.[5]  (Tr. 603.)  These records became a part of the record as Exhibit 25F.  (Tr. 603-20.)  The ALJ never mentioned Exhibit 25F in his decision.

Exhibit 25F includes, in relevant part, progress notes from Shands and results of diagnostic tests pertaining to Plaintiff's knees.  These progress notes demonstrate that Plaintiff was diagnosed with medial meniscus tear, left; internal derangement of the left knee; and knee pain, unspecified laterally.  (*See, e.g.*, Tr. 606.)  Plaintiff complained of "ongoing pain with the knees over the last few months," which he described as "moderate, severe pain," improved by rest and made worse by activity.  (*Id.*)  Associated symptoms included pain, swelling, and difficulty ambulating.  (*Id.*)  The physical examination of Plaintiff's left lower extremity on February 19, 2016 indicated severe tenderness to palpation located at the medial and lateral joint line and full range of motion, except for pain with hyperextension and hyperflexion.  (Tr. 610.)  The X-rays of Plaintiff's knees, performed on February 19, 2016, demonstrated "[p]ossible small left knee joint effusion."  (Tr. 615.)  The MRI of Plaintiff's left knee, performed the previous month, revealed "[m]ultidirectional tears of the medial meniscus . . . , with medial compartment osseous contusions versus reactive bone marrow due to

---

[5] At the hearing, Plaintiff's representative advised that she had requested records from Shands, but they were "way behind in processing the request."  (Tr. 38.)  The ALJ agreed to hold the record open for 20 days, even though Plaintiff's representative was not sure that would be sufficient time to receive the records.  (Tr. 39, 58.)

degenerative changes[,] [p]ossible subacute medial patellofemoral ligament and medial patellar retinaculum tear [and] [i]ntrasubstance degeneration of the lateral meniscal posterior horn." (Tr. 611; see also Tr. 588.[6])

The ALJ did not address Plaintiff's knee impairment in his decision, even though it was discussed at the hearing and throughout the record, not only in Exhibit 25F, which the ALJ apparently missed.[7] (See, e.g., Tr. 585, 588, 590-91.) As such, the ALJ did not address any impact that Plaintiff's knee impairment might have on his ability to perform medium work, including the ability to stand/walk and/or lift. Also, the evidence that the ALJ failed to discuss seems inconsistent with the ALJ's statement that "the medical records do not support a worsening of the claimant's conditions." (Tr. 26.)

---

[6] Although the ALJ mentioned Exhibit 23F, which also included the results of Plaintiff's left knee MRI, the ALJ did not discuss the MRI findings. (See Tr. 24.)

[7] The Commissioner argues that Plaintiff has failed to demonstrate that his knee impairment was causing disabling limitations for a continuous 12-month period preceding the ALJ's decision. However, Plaintiff testified at the August 8, 2016 hearing that he started having knee pain about a year earlier (Tr. 51), or around August 2015, which is well over a year before the ALJ's November 1, 2016 decision. Under the regulations, an impairment "must have lasted *or must be expected to last* for a continuous period of at least 12 months." 20 C.F.R. § 416.909 (emphasis added); see also 20 C.F.R. § 416.905(a). Further, it appears that the Commissioner is trying to justify the ALJ's apparent failure to discuss Plaintiff's knee impairment and any relevant records by providing numerous *post hoc* rationalizations. (See Doc. 22 at 3-5.) However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Defendant's *post hoc* rationalizations "regardless of whether they are supported by substantial evidence, cannot bolster or replace the ALJ's reasons or lack thereof. It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ." *Weaver v. Colvin*, Case No. 3:12-cv-513-J-JRK, 2013 WL 4699278, *6 (M.D. Fla. Aug. 30, 2013).

The ALJ's failure to discuss this evidence makes it impossible for the Court to determine whether the ALJ even considered it. Although an ALJ is not required to refer to every piece of evidence in his decision, the ALJ may not ignore relevant evidence, particularly when it supports the claimant's position. *See, e.g., Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000); *Meek v. Astrue*, 2008 WL 4328227, *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . . Rather, the judge must explain why significant probative evidence has been rejected.") (internal citations and quotation marks omitted). The evidence at issue supports Plaintiff's position because the MRI findings could certainly explain Plaintiff's complaints of knee pain and resulting walking/standing and lifting limitations.[8]

Based on the foregoing, the Court cannot conclude that the ALJ's decision is supported by substantial evidence. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an

---

[8] The Court cannot conclude that the ALJ's failure to address this evidence is a harmless error. As Plaintiff points out, a limitation to light work for a person closely approaching retirement age, without past relevant work, and with a limitation to simple, unskilled, and repetitive work, would have resulted in a finding of disability under the Medical Vocational Guidelines ("Grids") under Grid Rule 202.04. 20 C.F.R. Subpart P, App. 2 § 202.04 (2017).

abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"). Therefore, on remand, the ALJ is directed to conduct the five-step sequential evaluation process in light of all the evidence in the record, including the evidence pertaining to Plaintiff's knee impairment, and conduct any further proceedings deemed appropriate.[9] In light of this conclusion, the Court need not address Plaintiff's second argument. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the ALJ for further proceedings

---

[9] After the ALJ's decision, on March 22, 2017, Plaintiff submitted two years of primary care treatment notes from Shands Jacksonville Total Care Clinic and UF Health – Elizabeth G. Means Center for the period January 2014 through September 2016. (Tr. 60-178.) This evidence was received by Plaintiff's representative after the ALJ's decision. (Tr. 60, 158.) On July 11, 2017, the Appeals Council found that there was no reasonable probability that this evidence would change the outcome. (Tr. 2.) As this evidence is now part of the record, it should be reconsidered along with the other evidence on remand. Of note, this evidence includes progress notes regarding Plaintiff's knee impairment. (*See, e.g.*, Tr. 79 ("Mr. Shomlo is [a] 62 y/o male presenting with 3 weeks of left knee pain without any know[n] injury. He woke up with pain, mild medial to medial-superior swelling and difficulty with ambulation. He is using ice, epso[m] salt soaks, patella stabilizing soft knee brace, and crutches to help with [t]he pain. He states that the pain is a 3-4/10 but increased to an 8 to 10/10 with ambulation. The right knee is now getting sore because he is shifting most of his weight on that knee.").)

consistent with this Order.

2. The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on July 26, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record